ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NELSON JOSEPH ZAMBRANO<br><br>Apelante<br><br>v.<br><br>OLGA L. MAYOR AGUIRRE<br><br>Apelado | KLAN202301013 | *Apelación* acogida como *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Caso Núm.: CN2023RF00059<br><br>Sobre: Custodia (Alimentos y Patria Potestad) |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Mateu Meléndez y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de febrero de 2024.

Comparece la parte peticionaria, el señor Nelson J. Zambrano (señor Zambrano o peticionario), y nos solicita intervenir para que dejemos sin efecto la *Orden* emitida y notificada el 12 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). En el aludido dictamen, el TPI reiteró la prevalencia de la determinación emitida el 8 de agosto de 2023 y notificada el día 11 siguiente, por virtud de la cual ordenó que la menor S.Z.M. continuara estudios en Robinson School, a costa del peculio del peticionario.

Anticipamos la denegación del auto discrecional de *Certiorari.*

**I.**

La causa del título se inició el 12 de junio de 2023, ocasión en que el señor Zambrano presentó ante el TPI una petición de custodia de S.Z.M.[2] La parte recurrida, la señora Olga Mayor

---

[1] El Hon. José I. Campos Pérez sustituyó al Hon. Fernando J. Bonilla Ortiz, por virtud de la Orden Administrativa TA-2023-212, emitida el 6 de diciembre de 2023.
[2] Apéndice, págs. 4-5.

Aguirre (señora Mayor Aguirre o recurrida), ha fungido como persona custodia de la hija de ambos litigantes, quien al momento de la acción civil había cumplido doce años. En lo que nos compete, el señor Zambrano expresó en su pedimento que asumía todos los gastos educativos de la menor, quien cursa estudios en Robinson School.

La señora Mayor Aguirre presentó su alegación responsiva.[3] En lo que atañe al recurso, la recurrida aceptó que el peticionario cubría los costos educativos de S.Z.M. No obstante, solicitó que el caso se refiriera al examinador de pensiones alimentarias (EPA) para fijar una pensión conforme a derecho.

El TPI refirió el caso al EPA, Juan Corchado Cuevas. Por igual, remitió la causa a la Unidad Social de Familia y Menores, para que rindiera un informe sobre custodia y relaciones filiales.[4] **El EPA citó a las partes del epígrafe a una vista a celebrarse el 11 de octubre de 2023, mediante videoconferencia**.[5]

Así las cosas, el 7 de julio de 2023, la recurrida instó una solicitud de remedio.[6] En esencia, expuso que el señor Zambrano manifestó que anularía la matrícula en Robinson School para el siguiente año escolar, la cual aseguró que había sido satisfecha. Sostuvo que no estaba conforme con dicha intención. Explicó que la menor estudiaba en Robinson School desde que residía en Puerto Rico,[7] por lo que expresó que no existía razón para exponerla a cambios significativos que incidirían sobre la estabilidad emocional de S.Z.M.

En su réplica,[8] el señor Zambrano negó que su determinación fuera arbitraria y abogó sobre su imposibilidad de

---

[3] Apéndice, págs. 6-7.
[4] Apéndice, págs. 10-11.
[5] Apéndice, págs. 13-15.
[6] Apéndice, págs. 8-9.
[7] Surge del expediente que S.Z.M. llegó a Puerto Rico en 2022.
[8] Apéndice, págs. 16-20, con anejos a las págs. 21-26.

continuar asumiendo el "gran costo" de esa institución educativa en particular. Afirmó que no contaba con la totalidad del dinero que requería Robinson School por anticipado. Aseveró que había solicitado información de otras instituciones educativas, sin contar con la cooperación de la recurrida. En cuanto a las razones dinerarias, en un escrito posterior,[9] informó al TPI que enfrentaba una solicitud de orden de protección en su contra. Explicó que las instancias legales vinculadas a ese pleito habían impactado sus finanzas.

En respuesta,[10] primero, la señora Mayor Aguirre insistió que se oponía al cambio de colegio, porque el señor Zambrano no había sustentado con evidencia su solicitud. Segundo, en otra moción,[11] apostilló que el gasto legal del peticionario no podía afectar el mejor bienestar de S.Z.M. Destacó que el cambio solicitado no se basaba en una merma de ingresos, sino en gastos legales que no debían ir por encima de la educación de la menor.

El TPI emitió varios pronunciamientos;[12] sin embargo, el atinente a las contenciones del recurso lo dictó el 8 de agosto de 2023, notificado el día 11 siguiente:[13]

> ATENDIDAS LAS POSICIONES DE LAS PARTES (DEMANDANTE SUMAC #30 Y DEMANDADA SUMAC #31) SE ORDENA QUE LA MENOR **PERMANEZCA ESTUDIANDO EN EL COLEGIO ROBINSON SCHOOL Y EL DEMANDANTE PAGUE LOS COSTOS DE DICHO COLEGIO**.

---

[9] Apéndice, págs. 51-56.

[10] Apéndice, págs. 46-47.

[11] Apéndice, págs. 57-59.

[12] El 10 de julio de 2023, el TPI ordenó a las partes a que acordaran una institución escolar para la menor; así como que el peticionario no había explicado por qué no podía asumir el costo del colegio. Apéndice, pág. 28; véase, además, Apéndice, págs. 30-31; 32-33, con anejos a las págs. 33-45. Luego, el 19 de julio de 2023, el TPI acotó que de los documentos anejados por el peticionario no se desprendían las razones para el cambio de institución educativa. Apéndice, pág. 29. De hecho, el 3 de agosto de 2023, el TPI notificó una *Orden* en la que expresó que el señor Zambrano no había demostrado la necesidad del cambio a otra institución educativa. Tildó como *genéricas* sus alegaciones de incapacidad para asumir el gasto de colegio. Apéndice, págs. 49-50.

[13] Apéndice, págs. 60-62.

ESTE TRIBUNAL RESUELVE SUMARIAMENTE ESTA CONTROVERSIA PORQUE SE LE HA[N] DADO VARIAS OPORTUNIDADES AL DEMANDANTE PARA QUE DEMUESTRE FEHACIENTEMENTE POR QU[É] SUPUESTAMENTE NO PUEDE CONTINUAR COSTEANDO LA EDUCACI[Ó]N DE SU HIJA EN EL REFERIDO COLEGIO Y AL D[Í]A DE HOY TAN S[Ó]LO HA ALEGADO QUE SE HA TENIDO QUE DEFENDER EN UN PROCESO AL AMPARO A LA LEY 54 Y ELLO HA CONLLEVADO UNA EROGACI[Ó]N DE FONDOS.

ADEM[Á]S, ESTA CONTROVERSIA FUE TRA[Í]DA AL TRIBUNAL DE MANERA TARD[Í]A POR EL DEMANDANTE; ESTO FUE, CERCA DE LA PRIMERA SEMANA DE JULIO DE 2023. V[É]ASE SUMAC #9. (Énfasis en el original).

El señor Zambrano peticionó la reconsideración de la *Orden* el 28 de agosto de 2023 y anejó documentos con el fin de acreditar su situación económica.[14] Luego de solicitar la postura de la recurrida,[15] el 10 de octubre de 2023 el TPI notificó la siguiente *Orden*:[16]

EL 15 DE SEPTIEMBRE DE 2023 (SUMAC #68) EL TRIBUNAL EMITI[Ó] LA SIGUIENTE ORDEN:

PREVALECE LA ORDEN DEL 8 de agosto de 2023 (SUMAC #35) MEDIANTE LA CUAL SE ORDEN[Ó] QUE LA MENOR PERMANEZCA ESTUDIANDO EN EL COLEGIO ROBINSON SCHOOL Y EL DEMANDANTE PAGUE LOS COSTOS DE DICHO COLEGIO.

AHORA BIEN, LA ORDEN DEL 15 DE SEPTIEMBRE DE 2023 (SUMAC #68) TAMBI[É]N DISPUSO LO SIGUIENTE:

EL 21 DE SEPTIEMBRE DE 2023 VENCE EL T[É]RMINO CONCEDIDO A LA DEMANDADA PARA QUE SE EXPRESE EN TORNO A LA RECONSIDERACI[Ó]N DE DICHA ORDEN, QUE FUE PRESENTADA POR EL DEMANDANTE.

AL D[Í]A DE HOY, 10 DE OCTUBRE DE 2023, LA DEMANDADA NO SE HA OPUESTO A LA RECONSIDERACI[Ó]N DEL DEMANDANTE NI HA SOLICITADO PR[Ó]RROGA PARA HACERLO.

POR TANTO, PARA EL PR[Ó]XIMO SEMESTRE QUE COMIENZA EN ENERO DE 2024, LAS PARTES ESCOGERÁN UNA NUEVA INSTITUCIÓN EDUCATIVA

---

[14] Apéndice, págs. 63-66, con anejos a las págs. 67-100. Debemos mencionar que los anejos que obran en el expediente fueron deliberadamente tachados de forma parcial.
[15] Apéndice, pág. 116.
[16] Apéndice, págs. 118-120.

PARA LA MENOR. (Énfasis en el original suprimido y subrayado nuestro).

De esta determinación, la señora Mayor Aguirre solicitó reconsideración el 12 de octubre de 2023.[17] Indicó que por inadvertencia dio por resuelta la reconsideración del peticionario. Aseveró también que el TPI debía tomar conocimiento de que el día anterior, durante la vista ante el EPA, el señor Zambrano enunció que estaba analizando si asumiría capacidad económica. A tales efectos, intimó al TPI a dejar sin efecto la orden de 10 de octubre de 2023, en cuanto a escoger una nueva institución educativa para S.Z.M. para el semestre escolar a comenzar en enero de 2024.

El TPI acogió el pedimento de la señora Mayor Aguirre y, el 12 de octubre de 2023, dictó la *Orden* aquí recurrida:[18]

> HA LUGAR. **SE DEJA SIN EFECTO LA ORDEN DEL 10 DE OCTUBRE DE 2023 (SUMAC #79)** QUE HAB[Í]A DECRETADO LO SIGUIENTE: PARA EL PR[Ó]XIMO SEMESTRE QUE COMIENZA EN ENERO DE 2024, LAS PARTES ESCOGER[Á]N UNA NUEVA INSTITUCI[Ó]N EDUCATIVA PARA LA MENOR.
>
> EN SU CONSECUENCIA, SE DECLARA **NO HA LUGAR** LA RECONSIDERACION [...] PRESENTADA POR EL DEMANDANTE EL 28 de agosto de 2023 (SUMAC #42). PREVALECE EN TODA SU EXTENSI[Ó]N LA ORDEN DEL 8 de agosto de 2023 QUE DECRET[Ó] LO SIGUIENTE: **SE ORDENA QUE LA MENOR PERMANEZCA ESTUDIANDO EN EL COLEGIO ROBINSON SCHOOL Y EL DEMANDANTE PAGUE LOS COSTOS DE DICHO COLEGIO (SUMAC #35)**. (Énfasis en el original).

Inconforme, el señor Zambrano acudió ante este foro intermedio, mediante un recurso de *Apelación*, el cual acogemos como un recurso discrecional de *Certiorari*[19] y esbozó los siguientes señalamientos de error:

> **Primer Error:** Erró el TPI al acoger la solicitud de reconsideración de la apelada y emitir una determinación final disponiendo que la menor se mantenga matriculada en Robinson School, institución

---

[17] Apéndice, págs. 121-122.

[18] Apéndice, págs. 1-3.

[19] Por economía procesal, conservamos la clasificación alfanumérica otorgada en Secretaría.

educativa de alto costo, y que ubica en Condado, siendo Canóvanas el lugar de residencia de la menor.

**Segundo Error:** Erró el TPI al determinar que la menor se mantenga matriculada en la institución educativa Robinson School sin que previamente celebrara una vista probatoria para emitir su dictamen.

**Tercer Error:** Erró el TPI al privar al peticionario de su día en corte resolviendo un asunto que incide en el ejercicio de la patria potestad sin que se observara el debido proceso de ley.

Mediante la *Resolución* dictada el 21 de noviembre de 2023, concedimos a la parte recurrida el término reglamentario para que presentara su alegato. Transcurrido el plazo dispuesto, la señora Mayor Aguirre no compareció. Por lo tanto, damos por perfeccionado el recurso y resolvemos sin el beneficio de su postura.

**II.**

**El auto de *Certiorari***

El auto de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones judiciales de un foro inferior y corregir algún error cometido por éste. *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al., v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334 (2005). A diferencia de la apelación, **el foro revisor tiene la facultad para expedir o denegar el recurso de *Certiorari* de manera discrecional**. *García v. Padró*, *supra*. El Tribunal Supremo de Puerto Rico ha definido *discreción* como el "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción". *Id.*, que cita a *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Por ende, la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera..." *Pueblo v. Sánchez González*, 90 DPR 197, 200 (1964), citado con aprobación en *García v. Padró*, *supra*, págs. 334-335.

No obstante, el ejercicio de la discreción no equivale a hacer abstracción del resto del Derecho, ya que ese proceder constituiría, en sí mismo, un abuso de discreción. *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001). Por lo tanto, el examen al auto discrecional que realizamos antes de decidir el curso a seguir no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG, supra,* pág. 176. Ello así, porque "el adecuado ejercicio de la discreción judicial está inexorable e indefectiblemente atado al concepto de la razonabilidad". *García v. Padró, supra*, pág. 335; *Pueblo v. Ortega Santiago, supra.*

Es sabido que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las cuales este foro intermedio tiene autoridad para atender los recursos de *Certiorari*. En su parte pertinente, la norma dispone que, **como excepción**, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurran decisiones en **casos de relaciones de familia**. Ahora, la norma procesal dispone expresamente que, al denegar la expedición de un recurso de *Certiorari*, este **Tribunal de Apelaciones no tiene que fundamentar su decisión**.

Además del examen objetivo antes descrito, para ejercer sabia y prudentemente nuestra facultad discrecional al determinar si expedimos o denegamos un recurso de *Certiorari*, nos guiamos por la Regla 40 del Reglamento del Tribunal de Apelaciones, *Criterios para la expedición del auto de Certiorari*, 4 LPRA Ap. XXII-B, R. 40. Así reza:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Claro está, es norma asentada que este tribunal intermedio no interviene con las determinaciones emitidas por el foro primario ni sustituye su criterio discrecional, "*salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto*". (Cursivas en el original). *Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018), que cita con aprobación a *Ramos Milano v. Wal-Mart*, 168 DPR 112, 121 (2006); *Rivera y otros v. Banco Popular*, 152 DPR 140, 155 (2000); *Meléndez Vega v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013).

### *Los alimentos a favor de los menores de edad*

En nuestro ordenamiento jurídico, los menores tienen un derecho fundamental a recibir alimentos. *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011). Este derecho emana de la cláusula constitucional del derecho a la vida consagrado en la Carta de Derechos de la Constitución de Puerto Rico. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022), que cita a *De León Ramos v. Navarro Acevedo*, 195 DPR 157 (2016). Por

lo anterior, los casos relacionados con los alimentos de los menores están revestidos del más alto interés público y el norte a seguir es su mejor bienestar. *Díaz Rodríguez v. García Neris*, *supra*, y los casos allí citados. Cónsono con lo anterior, el Artículo 653 del Código Civil de Puerto Rico, 31 LPRA sec. 7531, que versa sobre la obligación alimentaria, describe el concepto *alimentos* como sigue:

> Se entiende por alimentos todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia.
>
> **Cuando el alimentista es menor de edad, los alimentos comprenden también su educación,** las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales. (Énfasis nuestro).

Por su parte, la legislación especial estatuida en la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, *Ley Orgánica de la Administración Para el Sustento De Menores*, 8 LPRA sec. 501 *et seq.*, en su Artículo 2, define *alimentos* de la siguiente manera:[20]

> Es parte integral del derecho fundamental a la vida y a la subsistencia de la persona. Se refiere a todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia**. También comprenden la educación e instrucción del alimentista menor de edad**. Asimismo, se dispone que dicho término incluya los conceptos que de tiempo en tiempo sean establecidos o adoptados por las leyes federales y estatales que rigen sobre el particular. (Énfasis nuestro). 8 LPRA sec. 501 (7).

### III.

En síntesis, el señor Zambrano está en desacuerdo con la alegada "determinación final" que le compele a sufragar los gastos de educación de su hija menor de edad S.Z.M. en Robinson School,

---

[20] El Artículo 5, inciso (7), del borrador de las *Guías mandatorias para fijar y modificar pensiones alimentarias en Puerto Rico* define el término *alimentos* como "[t]odo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica del alimentista, según el ingreso familiar. Los alimentos comprenden también la educación y las atenciones de previsión acomodadas a los usos y a las circunstancias del entorno familiar y los gastos extraordinarios para la atención de las condiciones personales especiales del alimentista".

ubicado en San Juan, aun cuando la niña reside en Canóvanas. Arguye que el TPI erró al no celebrar una vista evidenciaría previo a su dictamen, lo que arguye incidió sobre su ejercicio de patria potestad y lo privó del debido proceso de ley mediante su día en corte. No nos persuade.

Luego de una evaluación mesurada del expediente ante nuestra consideración, ponderar la postura del peticionario y el pronunciamiento judicial recurrido, estimamos que no debemos intervenir en esta etapa de los procedimientos. En la causa presente, permanece bajo el escrutinio judicial el proceso para determinar la custodia de S.Z.M. y la fijación de la pensión alimentaria ante el EPA. Por ende, el dictamen no puede considerarse necesariamente como uno de naturaleza final como aduce el peticionario. De hecho, es sabido que las determinaciones de alimentos y de custodia de menores no constituyen cosa juzgada. De ocurrir cambios en las circunstancias, a la luz de los mejores intereses y el bienestar de los menores, dichas decisiones están sujetas a revisión judicial en el Tribunal de Primera Instancia. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 85-86 (2018); *Figueroa v. del Rosario*, 147 DPR 121, 128 (1998).

Somos de criterio que el TPI, en aras del bienestar de la menor, mantuvo inalterado el acuerdo previo de sus progenitores de que la niña estudie en Robinson School a costa del señor Zambrano, hasta tanto se resuelvan las contenciones pendientes. Opinamos que dicha determinación no debe ser alterada. Claro está, nuestra actual abstención no equivale a que estemos prejuzgando la procedencia o no de la asunción de todos los costos educativos de S.Z.M. en Robinson School por parte del peticionario. En su día, una vez adjudicadas finalmente la petición de custodia y la pensión alimentaria correspondiente, cualquiera

de las partes, que esté en desacuerdo con la resolución del foro primario, podrá acudir ante esta curia.

En suma, concluimos que el dictamen del TPI no adolece de abuso de discreción, prejuicio, parcialidad, error manifiesto ni es contrario a derecho. Ciertamente, tampoco están presentes los criterios expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, por lo que no se amerita nuestra intervención prematura.

**IV.**

A la luz de lo antes expuesto, denegamos la expedición del auto de *Certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones